UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

75 RETAIL ENTERPRISES, INC., a Florida
Corporation d/b/a X-Mart ADULT
SUPERCENTER, and EVGUENI
SOULAGUINE,

                    Plaintiffs,

-vs-                                                      Case No. 5:05-cv-129-Oc-10GRJ

BRAD KING, in his official capacity as State
Attorney in and for the Fifth Judicial Circuit,
Florida, and BILL FARMER, in his official
capacity as Sheriff of Sumter County,
Florida,

                      Defendants.
_____/

## O R D E R

This case is before the Court for consideration of the Plaintiffs' Motion for Preliminary Injunction (Doc. 3), to which the Defendants have responded (Docs. 16, 20). A hearing on the motion was held on March 24, 2005 and, thereafter, the Plaintiffs filed a proposed injunction (Doc. 25). The motion is ripe for review and the Court concludes that it is due to be denied.

**Background**

The facts, as set forth in the Plaintiffs' Verified Complaint (Doc. 1), are as follows. Plaintiff 75 Retail Enterprises, Inc. d/b/a X-Mart (X-Mart) is engaged in Sumter County,

Florida, in the business of selling, renting, and otherwise disseminating to the adult public materials, literature, tapes, supplies, and products of a sexually oriented nature.

On July 6, 2004, an X-Mart store opened in Sumter County. After X-Mart opened, various members of the community voiced their disapproval of the store and looked to their local elected officials and church leaders to have X-Mart closed down. A spokesman for the Sumter County Sheriff's Office reported that Sheriff Bill Farmer planned to work with the State Attorney's Office to see if there was any legal procedure available to shut down the new business. Further, the spokesman stated that "it's the sheriff's belief that this type of business in not an acceptable community standard. It remains to be seen if there is anything that can be done about it. It's the first of its kind in Sumter County, and we hope that the community won't support it."

On July 7, 2004, the day following the opening of the store, a detective from the Sumter County Sheriff's Office went to X-Mart in an undercover capacity and purchased several DVDs (Digital Video Discs).

On July 9, 2004, Defendant Brad King, State Attorney of the Fifth Judicial Circuit of Florida, viewed the DVDs purchased by the detective.

On July 29, 2004, the First Baptist Church of Wildwood held a "community decency meeting," which was attended by several local government officials, including the Defendants. At that meeting, Defendant Farmer stated that he was shocked and horrified when he heard that X-Mart would be setting up shop in the county. "I felt completely violated," Defendant Farmer stated. "I felt that they had violated the sanctity of my county."

At the community meeting, Defendant King explained to the audience that in his experience it was difficult to prosecute obscenity cases, but, nonetheless, he was in the process of looking into the items sold at the Sumter County X-Mart. Defendant King stated that if he believed that the items were obscene, he planned to prosecute. "It's not going to be an overnight fix, though," Defendant King stated. "We're talking about a process that could take a year."

On August 10, 2004, detectives from the Sumter County Sheriff's Office went to X-Mart in an undercover capacity for the second time and purchased a DVD entitled "5 Guy Creampie II."

On August 11, 2004, Florida Circuit Court Judge Hale R. Stancil entered an Order finding probable cause that the DVD was obscene as defined by Florida Statute 847.001(10).

On September 21, 2004, Judge Stancil also entered Orders finding probable cause that three other DVDs purchased from X-Mart were obscene under Florida law.

On October 5, 2004, Florida Circuit Judge William H. Hallman signed a search warrant allowing officers from the Sumter County Sheriff's Office to search X-Mart and seize all copies of the DVDs specifically described in Judge Stancil's probable cause orders, as well as employment records and any other contraband. The warrant was executed on the same day, and copies of the DVDs, along with employee records, were seized by the sheriff's office.

After the search took place, Defendant Farmer was quoted in a news article as saying "We're going to do everything legally we can to close the store."  Additionally, Defendant Farmer stated that included sending in undercover agents each month, possibly each week to purchase pornography.  He stated that a judge has already deemed four of the videos as obscene, now it will be up to a jury to watch the tapes and decide if they agree.  Defendant Farmer added that even if a jury were to decide that the tapes were obscene, that would not stop business at X-Mart.  The store would only be required to remove the obscene videos, and the hundreds of others for sale there would still be fair game.[1]

On October 13, 2004, through Assistant State Attorney Toby Hunt, Defendant King filed a one count information against Plaintiff Evgueni Soulaguine, who is employed by X-Mart, for the sale of an obscene DVD in violation of Florida Statute 847.011(1)(a) and 847.001(10).

On October 20, 2004, Plaintiff Soulaguine surrendered himself to the Sumter County Jail, posted a $500 bond, and was released pending trial.  Plaintiff Soulaguine has been offered a plea agreement by Defendant King, which requires Plaintiff Soulaguine to "forfeit [his] business license."

---

[1] There is no evidence presently in the record that Defendant Farmer participated in the ultimate decision to prosecute Plaintiff Soulaguine.  In fact, the evidence is to the contrary. See Doc. 16, Exh. 1, Affidavit of Sheriff William Farmer.

The Plaintiffs claim that the prosecution of Plaintiff Soulaguine has been initiated by the Defendants in bad faith.  The Plaintiffs contend that the investigation and prosecution was brought based on the desire of the Defendant's to have X-Mart closed down and to impose an unlawful restraint against the Plaintiffs for the purpose of censoring constitutionally protected material. The Plaintiffs contend that the Defendants intend to use the Florida obscenity laws and repeated prosecutions to force the closure of the Plaintiffs' business.  In support of their bad faith claim, the Plaintiffs rely on the statements of the Defendants, "indicating their disapproval of sexually explicit speech and their intention to drive the Plaintiffs out of the community utilizing all powers at their disposal, including obscenity prosecutions."  In addition, the Plaintiffs contend that it is clear from the Defendants' public statements "that they were more concerned about the nature of [the] Plaintiffs' speech and not whether any particular item offered to the public was allegedly obscene."  Lastly, the Plaintiffs argue that the plea agreement offered to Plaintiff Soulaguine requiring the forfeiture of the business license is evidence that the sole motive of the Defendants was to close down the Plaintiffs' business.

The Plaintiffs also claim that Florida's obscenity law is unconstitutional as applied to these Plaintiffs and the particular circumstances where a retail store offers sexually explicit materials for off-premises viewing by consenting adults. In particular, the Plaintiffs contend that the law violates "the constitutional guarantees of the First and Fourteenth Amendment and the Due Process Clause and the privacy rights contained in penumbra rights of the

United States Constitution . . ." and the corresponding provisions of the Florida Constitution.

The Plaintiffs have requested this Court to enjoin the State of Florida and its officers from carrying out their current prosecution against Plaintiff Soulaguine, from conducting any further searches or seizures from or on the premises of the X-Mart in Sumter County, from conducting any future arrests or prosecutions of the Plaintiffs and their employees, and from enforcing Florida's obscenity law based on a finding that the statute is unconstitutional as applied to the Plaintiffs.[2]

## Preliminary Injunction Standard

In ruling on the Plaintiffs' motion for a preliminary injunction, the Court must determine if the following prerequisites have been established: (1) a substantial likelihood that the Plaintiffs will ultimately prevail on the merits of their claim; (2) the Plaintiffs will suffer irreparable injury if the injunction is not granted; (3) the threatened injury to the Plaintiffs outweighs the threatened harm the proposed injunction may cause the Defendants; and (4) the injunction, if issued, would not be a disservice to the public interest.[3]  For this Court to issue a preliminary injunction is "an extraordinary and drastic

---

[2] See Doc. 3, Plaintiffs' Emergency Motion for Issuance of Preliminary Injunction. The Plaintiffs' Proposed Order Granting Motion for Preliminary Injunction suggests that the Court screen the Defendants' future prosecutions against the Plaintiffs, rather than completely enjoin them. See Doc. 25, Proposed Order, pg. 18-19.

[3] Johnson v. U.S. Dept. of Agriculture, 734 F.2d 774, 781 (11th Cir. 1984); Canal Authority of State of Fla. v. Callaway, 489 F.2d 567, 572 (5th Cir. 1974).

remedy" for the primary purpose of preserving the court's ability to render a meaningful decision on the merits.[4]

## Discussion

The first and ultimately dispositive issue on this motion for preliminary injunctive relief is whether the Plaintiffs are substantially likely to prevail on the merits of their claim. The Court concludes that they are not substantially likely to succeed and their request for a preliminary injunction is due to be denied.

*Bad Faith Claim*

In Younger v. Harris, the Supreme Court held that federal courts should abstain from suits aimed at enjoining pending state criminal prosecutions.[5] The Supreme Court recognized, however, "when absolutely necessary for protection of constitutional rights, courts have power to enjoin state officers from instituting criminal actions. But this may not be done, except under extraordinary circumstances, where the danger of irreparable loss is both great and immediate."[6] The requisite injury must be more than simply "the cost, anxiety, and inconvenience of having to defend against a single prosecution".[7]

Under the law of this Circuit, "both precedent and policy indicate that irreparable injury is sufficiently established if the federal plaintiff demonstrates that the prosecution

---

[4] Canal Authority, 489 F.2d at 573.

[5] 401 U.S. 37, 43 (1971).

[6] Id. (quoting Fenner v. Boykin, 271 U.S. 240, 243-44 (1926)).

[7] Id. at 46.

against him was brought in bad faith for the purpose of retaliating for or deterring the exercise of constitutionally protected rights."[8] The proper test to be applied in the context of a suit to enjoin a criminal prosecution allegedly brought in bad faith is as follows:

> The Court should consider whether the plaintiffs have shown, first, that the conduct allegedly retaliated against or sought to be deterred was constitutionally protected, and, second, that the State's bringing of the criminal prosecution was motivated at least in part by a purpose to retaliate for or to deter that conduct. If the Court concludes that the plaintiffs have successfully discharged their burden of proof on both of these issues, it should then consider a third: whether the State has shown by a preponderance of the evidence that it would have reached the same decision as to whether to prosecute even had the impermissible purpose not been considered.[9]

Assuming the Plaintiffs' conduct that the Defendants sought to deter in this case (the sale of sexually explicit materials in general) is constitutionally protected,[10] the next question is whether the specific DVDs constituting the subject of the pending prosecution of Plaintiff Soulaguine are also constitutionally protected. If so, the Plaintiffs' claim for relief from vexatious or bad faith prosecution takes on great weight. If the material is likely not be constitutionally protected, however, the Plaintiffs' claim is substantially weakened.[11]

---

[8] Wilson v. Thompson, 593 F.2d 1375, 1383 (5th Cir. 1979). The Eleventh Circuit has adopted the case law of the former Fifth Circuit as its governing body of precedent. Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981).

[9] Id. at 1387.

[10] Erotic materials that arguably have some artistic value are afforded protection under the First Amendment. See Young v. American Mini Theatres, Inc., 427 U.S. 50, 70 (1976). However, the sale of obscene materials is beyond the protection of the First Amendment. See Roth v. U.S., 354 U.S. 476, 485 (1957).

[11] The Court recognizes that the Plaintiffs are not required to show that the prosecution
(continued...)

Here, the Court must assume for present purposes that the specific DVDs made the subject of the pending prosecution are criminally "obscene" under Florida law. The Plaintiffs have made no showing to the contrary, and a Florida Circuit Judge – whose determination is entitled to deference – has ruled, after review, that probable cause exists to conclude that the subject material is obscene.

The Plaintiffs primarily rely on the public statements made by the Defendants and the "business license forfeiture" provision of the plea agreement to support their argument that the Defendants' motivation for the prosecution was to deter the Plaintiffs' constitutionally protected conduct. As a whole, however, it appears from the public statements that the Defendants were simply addressing community concerns, voicing their own concerns, and explaining to the community what they could do <u>within the law</u> to prevent X-Mart from selling obscene materials.[12] Additionally, the plea agreement provision requiring the forfeiture of X-Mart's business license is not compelling evidence that the Defendants acted in bad faith. It is neither unusual nor indicative of bad faith that, as part of a plea agreement, the State would seek the forfeiture of a business license when

---

[11](...continued)
could not possibly result in a valid conviction (<u>Fitzgerald v. Peek</u>, 636 F.2d 943, 945 (5th Cir. 1981)); and it follows, therefore, that the likelihood of a sustainable prosecution is not fatal to the Plaintiffs' claim of bad faith. Clearly, however, the probability of the success or failure of the pending prosecution on constitutional grounds is a factor to be considered in evaluating the good faith or bad faith of the prosecutor. Otherwise, enjoining a <u>valid</u> prosecution because of the bad faith of the prosecutor in bringing it effectively conveys to the Plaintiffs a license to break the law through the simple device of maintaining a mixed inventory of lawful and unlawful merchandise.

[12]   <u>See</u> Doc. 1, Exh. 1, "Sumter Riled Up Over X-Mart," Exh. 2, "Locals Fret As Store Turns Wildwood Exit a Bit Sexier," Exh. 6, "Undercover Agents Raid Controversial Porn Store."

illegal activity took place in association with that same business.  Moreover, the Defendants characterize the license forfeiture provision as "negotiable" and have since withdrawn that provision from the proffered plea agreement, albeit after the commencement of this litigation.

In sum, and contrary to the Plaintiffs' arguments, the evidence suggests that the Defendants have brought the prosecution against Plaintiff Soulaguine in good faith.  The Defendants' public statements uniformly recite that they intend to act within the law when prosecuting obscenity cases.  In addition, the Defendants have exercised restraint.  Only one prosecution has been brought alleging one violation under Florida law against Plaintiff Soulaguine.[13]  The Defendants have not engaged in egregious behavior, such as exposing the Plaintiffs to multiple warrantless searches.  In fact, the Defendants have only executed one search warrant against X-Mart, after a state circuit judge found that probable cause existed to believe that several DVDs sold by the business were obscene.  The probable cause orders issued by Judge Stancil also are evidence that the Defendants were acting in good faith  – the state court found that there was probable cause to believe that the DVDs seized by the Sheriff's Office were obscene, supporting an inference that the Defendants were acting within their authority to enforce Florida's obscenity law.

---

[13]    The Court acknowledges that the threat of multiple prosecutions is not required to establish bad faith; however, multiple prosecutions is certainly evidence of bad faith.  See Fitzgerald, 636 F.2d at 944; Krahm v. Graham, 461 F.2d 703 (9th Cir. 1972).

*Constitutionality of Florida's Obscenity Law*

The Plaintiffs have also requested the Court to enjoin the Defendants from enforcing Florida's obscenity law against them.  To enjoin the Defendants' from enforcing Florida's obscenity law would be to enjoin the present state prosecution against the Plaintiffs.  Accordingly, under Younger and Wilson, the Court must abstain from interfering with the state proceedings unless the Plaintiffs have shown that the Defendants are acting in bad faith.  Since the Court has already established that the Plaintiffs are not likely to succeed on this claim, the constitutionality of Florida's obscenity law need not be addressed in this Order.  That issue, as well as the issue of the Defendants' bad faith may be raised and adjudicated in the state court prosecution.[14]

## Conclusion

The Plaintiffs simply have not come forward with sufficient evidence to show that this case is the kind of "extraordinary circumstance" where the federal courts should interfere with a state criminal prosecution.  Accordingly, since the Plaintiffs are not substantially

---

[14] See, e.g., State v. Glossom, 462 So.2d 1082 (Fla. 1985) (affirming the circuit court's decision to dismiss an indictment for prosecutorial misconduct); State v. Kraham, 360 So.2d 393 (Fla. 1978) (holding that the Florida law which makes unlawful the sale of obscene material is constitutional in a criminal obscenity case); Stall v. State, 570 So.2d 257 (Fla. 1990) (holding that the Florida obscenity statute is constitutional in a criminal obscenity case); State v. Parrish, 567 So.2d 461 (Fla 1st DCA 1990) (affirming circuit court's dismissal of an indictment because of selective prosecution); State v. Esqueff, 468 So.2d 395 (Fla. 3rd DCA 1985) (reversing the circuit court's dismissal of an indictment for alleged prosecutorial misconduct); Harris v. State, 570 So.2d 397 (Fla. 3rd DCA 1990) (discussing prosecutor's response to defense counsel's argument of bad faith prosecution in a second degree murder case).

likely to succeed on the merits of their claim, their request for a preliminary injunction (Doc. 3) is DENIED.

    IT IS SO ORDERED.

    DONE and ORDERED at Ocala, Florida this 19th day of April, 2005.

*[signature]*

UNITED STATES DISTRICT JUDGE

Copies to:    Counsel of Record