UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

75 Retail Enterprises, Inc., a Florida
Corporation d/b/a X-Mart Adult
Supercenter, and Evgueni Soulaguine,

Plaintiffs,

-vs-                                                                    Case No. 5:05-cv-129-Oc-10GRJ

Brad King, in his official capacity as State
Attorney in and for the Fifth Judicial Circuit,
Florida, and Bill Farmer, in his official
capacity as Sheriff of Sumter County,
Florida, ,

Defendants.
_____/

## O R D E R

This case is before the Court for consideration of Sheriff Farmer's Motion to Dismiss Plaintiffs' Complaint (Doc. 22) and Defendant Brad King's Motion to Dismiss Count II of Plaintiffs' Complaint and Partial Motion to Dismiss Counts I and II of Plaintiffs' Complaint (Doc. 23), to which the Plaintiffs have responded (Docs. 26, 27). The motions are ripe for review and the Court concludes that Defendant Farmer's motion is due to be denied and Defendant King's motion is due to be denied in part and granted in part.

**Background**

The facts, as set forth in the Plaintiffs' Verified Complaint (Doc. 1), are as follows. Plaintiff 75 Retail Enterprises, Inc. d/b/a X-Mart (X-Mart) is engaged in Sumter County,

Florida, in the business of selling, renting, and otherwise disseminating to the adult public materials, literature, tapes, supplies, and products of a sexually oriented nature.

On July 6, 2004, an X-Mart store opened in Sumter County. After X-Mart opened, various members of the community voiced their disapproval of the store and looked to their local elected officials and church leaders to have X-Mart closed down. A spokesman for the Sumter County Sheriff's Office reported that Sheriff Bill Farmer planned to work with the State Attorney's Office to see if there was any legal procedure available to shut down the new business. Further, the spokesman stated that "it's the sheriff's belief that this type of business in not an acceptable community standard. It remains to be seen if there is anything that can be done about it. It's the first of its kind in Sumter County, and we hope that the community won't support it."

On July 7, 2004, the day following the opening of the store, a detective from the Sumter County Sheriff's Office went to X-Mart in an undercover capacity and purchased several DVDs (Digital Video Discs).

On July 9, 2004, Defendant Brad King, State Attorney of the Fifth Judicial Circuit of Florida, viewed the DVDs purchased by the detective.

On July 29, 2004, the First Baptist Church of Wildwood held a "community decency meeting," which was attended by several local government officials, including the Defendants. At that meeting, Defendant Farmer stated that he was shocked and horrified when he heard that X-Mart would be setting up shop in the county. "I felt completely violated," Defendant Farmer stated. "I felt that they had violated the sanctity of my county."

At the community meeting, Defendant King explained to the audience that in his experience it was difficult to prosecute obscenity cases, but, nonetheless, he was in the process of looking into the items sold at the Sumter County X-Mart. Defendant King stated that if he believed that the items were obscene, he planned to prosecute. "It's not going to be an overnight fix, though," Defendant King stated. "We're talking about a process that could take a year."

On August 10, 2004, detectives from the Sumter County Sheriff's Office went to X-Mart in an undercover capacity for the second time and purchased a DVD entitled "5 Guy Creampie II."

On August 11, 2004, Florida Circuit Court Judge Hale R. Stancil entered an Order finding probable cause that the DVD was obscene as defined by Florida Statute 847.001(10).

On September 21, 2004, Judge Stancil also entered Orders finding probable cause that three other DVDs purchased from X-Mart were obscene under Florida law.

On October 5, 2004, Florida Circuit Judge William H. Hallman signed a search warrant allowing officers from the Sumter County Sheriff's Office to search X-Mart and seize all copies of the DVDs specifically described in Judge Stancil's probable cause orders, as well as employment records and any other contraband. The warrant was executed on the same day, and copies of the DVDs, along with employee records, were seized by the sheriff's office.

After the search took place, Defendant Farmer was quoted in a news article as saying "We're going to do everything legally we can to close the store." Additionally, Defendant Farmer stated that included sending in undercover agents each month, possibly each week to purchase pornography. He stated that a judge has already deemed four of the videos as obscene, now it will be up to a jury to watch the tapes and decide if they agree. Defendant Farmer added that even if a jury were to decide that the tapes were obscene, that would not stop business at X-Mart. The store would only be required to remove the obscene videos, and the hundreds of others for sale there would still be fair game.

On October 13, 2004, through Assistant State Attorney Toby Hunt, Defendant King filed a one count information against Plaintiff Evgueni Soulaguine, who is employed by X-Mart, for the sale of an obscene DVD in violation of Florida Statute 847.011(1)(a) and 847.001(10).

On October 20, 2004, Plaintiff Soulaguine surrendered himself to the Sumter County Jail, posted a $500 bond, and was released pending trial. Plaintiff Soulaguine has been offered a plea agreement by Defendant King, which requires Plaintiff Soulaguine to "forfeit [his] business license."

In Count I of their Verified Complaint, the Plaintiffs claim that the prosecution of Plaintiff Soulaguine has been initiated by the Defendants in bad faith. The Plaintiffs contend that the investigation and prosecution was brought based on the desire of the Defendant's to have X-Mart closed down and to impose an unlawful restraint against the

4

Plaintiffs for the purpose of censoring constitutionally protected material.  The Plaintiffs contend that the Defendants intend to use the Florida obscenity laws and repeated prosecutions to force the closure of the Plaintiffs' business.  In support of their bad faith claim, the Plaintiffs rely on the statements of the Defendants, "indicating their disapproval of sexually explicit speech and their intention to drive the Plaintiffs out of the community utilizing all powers at their disposal, including obscenity prosecutions."  In addition, the Plaintiffs contend that it is clear from the Defendants' public statements "that they were more concerned about the nature of [the] Plaintiffs' speech and not whether any particular item offered to the public was allegedly obscene."  Lastly, the Plaintiffs argue that the plea agreement offered to Plaintiff Soulaguine requiring the forfeiture of the business license is evidence that the sole motive of the Defendants was to close down the Plaintiffs' business.

In Count II of their Verified Complaint, the Plaintiffs also claim that Florida's obscenity law is unconstitutional as applied to these Plaintiffs and the particular circumstances where a retail store offers sexually explicit materials for off-premises viewing by consenting adults. In particular, the Plaintiffs contend that the law violates "the constitutional guarantees of the First and Fourteenth Amendment and the Due Process Clause and the privacy rights contained in penumbra rights of the United States Constitution . . ." and the corresponding provisions of the Florida Constitution.

The Plaintiffs have requested this Court to permanently enjoin the State of Florida and its officers from carrying out their current prosecution against Plaintiff Soulaguine, from conducting any future arrests or prosecutions of the Plaintiffs and their employees, and

from engaging in any conduct which is the subject of their Verified Complaint.[1] Additionally, the Plaintiffs request a declaration by the Court "that the Defendants' past, present and planned future conduct against the Plaintiffs" violates the Plaintiffs' constitutional rights under both the United States Constitution and Florida Constitution, and that Florida Statute 847.011 is unconstitutional as applied to the Plaintiffs.  Lastly, the Plaintiffs request the Court to issue a judgment for money damages incurred by the Plaintiffs as a result of the Defendants' unlawful conduct.

## Motion to Dismiss Standard

In passing on a motion to dismiss under Rule 12(b)(6), the Court is mindful that "[d]ismissal of a claim on the basis of barebones pleadings is a precarious disposition with a high mortality rate."[2] Thus, if a complaint "shows that the Plaintiff is entitled to <u>any</u> relief that the Court can grant, regardless of whether it asks for the proper relief," it is sufficiently pled.[3] As the Supreme Court declared in <u>Conley v. Gibson</u>, a complaint should not be dismissed for failure to state a claim unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."[4] The Federal

---

[1] The Plaintiffs also request preliminary injunctive relief, but such relief was denied by the Court on April 19, 2005 (Doc. 28).

[2] <u>Int'l Erectors, Inc. v. Wilhoit Steel Erectors Rental Serv.</u>, 400 F.2d 465, 471 (5th Cir. 1968).

[3] <u>Dotschay v. Nat. Mut. Ins. Co.</u>, 246 F.2d 221 (5th Cir. 1957).

[4] <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).  <u>See also</u> <u>Cook & Nichol, Inc. v. The Plimsoll Club</u>, 451 F.2d 505 (5th Cir. 1971).

Rules of Civil Procedure "do not require a claimant to set out in detail the facts upon which he bases his claim."[5] Instead, all that is required is that the claimant set forth a "short and plain statement of the claim" sufficient to give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests."[6] However, "while notice pleading may not require that the pleader allege a 'specific fact' to cover each element of a claim, it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."[7]

## Discussion

*Bad Faith Claim*

Defendant Farmer contends that the Plaintiffs have failed to allege sufficient facts to state a claim for bad faith prosecution. In particular, Defendant Farmer argues that to succeed on their bad faith claim, the Plaintiffs must prove that the prosecution was brought without a reasonable expectation of obtaining a valid conviction, and the Plaintiffs' Complaint contains no such allegations. In fact, the Plaintiffs never allege that the DVDs which are the subject of the prosecution are non-obscene in nature and constitutionally protected. Defendant Farmer also argues that "the Complaint is devoid of allegations of any actual conduct by Sheriff Farmer and his deputies from the opening of X-Mart in July

---

[5] Conley, 355 U.S. at 47.

[6] Id.

[7] Roe v. Aware Woman Center for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001) (quotations omitted).

of 2004 to present, which is constitutionally violative." He contends that the conduct of the sheriff's office is "limited in nature, involving two purchases of DVDs and the service of a limited search warrant."

The Court concludes that Defendant Farmer's arguments are without merit, and his motion to dismiss with respect to the Plaintiffs' bad faith claim is due to be denied.

In Younger v. Harris, the Supreme Court held that federal courts should abstain from suits aimed at enjoining pending state criminal prosecutions.[8] The Supreme Court recognized, however, "when absolutely necessary for protection of constitutional rights, courts have power to enjoin state officers from instituting criminal actions. But this may not be done, except under extraordinary circumstances, where the danger of irreparable loss is both great and immediate."[9]

Under the law of this Circuit, "both precedent and policy indicate that irreparable injury is sufficiently established if the federal plaintiff demonstrates that the prosecution against him was brought in bad faith for the purpose of retaliating for or deterring the exercise of constitutionally protected rights."[10] The proper test to be applied in the context of a suit to enjoin a criminal prosecution allegedly brought in bad faith is as follows:

---

[8]   401 U.S. 37, 43 (1971).

[9]   Id. (quoting Fenner v. Boykin, 271 U.S. 240, 243-44 (1926)).

[10]   Wilson v. Thompson, 593 F.2d 1375, 1383 (5th Cir. 1979). The Eleventh Circuit has adopted the case law of the former Fifth Circuit as its governing body of precedent. Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981).

> The Court should consider whether the plaintiffs have shown, first, that the conduct allegedly retaliated against or sought to be deterred was constitutionally protected, and, second, that the State's bringing of the criminal prosecution was motivated at least in part by a purpose to retaliate for or to deter that conduct. If the Court concludes that the plaintiffs have successfully discharged their burden of proof on both of these issues, it should then consider a third: whether the State has shown by a preponderance of the evidence that it would have reached the same decision as to whether to prosecute even had the impermissible purpose not been considered.[11]

Even though the Court ruled in its Order denying the Plaintiffs' motion for a preliminary injunction that the Plaintiffs are not substantially likely to succeed on the merits of their bad faith claim, the Court finds that the Plaintiffs have alleged sufficient facts to state a claim for bad faith prosecution under the Wilson test. First, the Plaintiffs allege that the Defendants sought to deter their conduct of selling non-obscene materials that are sexually explicit in nature, and such conduct is constitutionally protected.[12]  Second, in support of their bad faith claim, the Plaintiffs have alleged that the Defendants' motivation for the prosecution was to deter the Plaintiffs' constitutionally protected conduct.  In particular, the Plaintiffs allege that the public statements made by the Defendants and the "business license forfeiture" provision of the plea agreement demonstrate the Defendants' improper motivation in bringing the prosecution. Accordingly, the Plaintiffs' allegations are

---

[11]  Id. at 1387.

[12]  See Doc. 1, pg. 3, 6, 10, 13. Erotic materials that arguably have some artistic value are afforded protection under the First Amendment. See Young v. American Mini Theatres, Inc., 427 U.S. 50, 70 (1976).  However, the sale of obscene materials is beyond the protection of the First Amendment. See Roth v. U.S., 354 U.S. 476, 485 (1957).

sufficient to support a claim for bad faith and Defendant Farmer's motion to dismiss with respect to this claim is due to be denied.

*Constitutionality of Florida Obscenity Statute*

Defendant Farmer also contends that the Plaintiffs have failed to allege sufficient facts to support their second claim – that Florida's obscenity statute is unconstitutional as applied to the Plaintiffs. Defendant Farmer argues that the Plaintiffs have not adequately pled facts to support a First Amendment violation because they enjoy no constitutional protection in selling obscene materials. Secondly, Defendant Farmer claims that the Plaintiffs' substantive due process claim should be dismissed as a matter of law since there is no constitutional protection for "take-out retail stores where the allegedly obscene materials are not viewed on the premises, but are enjoyed in the privacy of patrons' homes." Defendant King also argues that the Plaintiffs' constitutional claims should be dismissed because "[t]here is no basis for the claim that a fundamental right to sell and/or possess allegedly obscene material for the purpose of sale exists . . . under current federal law." Lastly, Defendant Farmer argues that the Plaintiffs have failed to state an equal protection claim because the Florida obscenity statute is rationally related to a legitimate state interest.

In response, the Plaintiffs state that the Defendants misunderstand their constitutional claims and contend that their "claims are primarily based on the First Amendment and the rights acknowledged by the Supreme Court in Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243 (1969)."

The Court concludes that the Defendants' motions to dismiss Count II of the Plaintiffs' Complaint are due to be denied. The Plaintiffs have alleged sufficient facts to support their claim that Plaintiff Soulaguine is being prosecuted in bad faith. Accordingly, if the Plaintiffs were to succeed on their bad faith claim, the Court may address the merits of their constitutional claims.[13]  In addition, notwithstanding the arguments of the Defendants, the Court declines to address the merits of the Plaintiffs' constitutional claims on a motion to dismiss, so as to avoid interfering with the state prosecution until it has been proven that the Defendants' have brought this prosecution in bad faith.

*Plaintiffs' Claim for Damages*

Defendant King argues that the Plaintiffs' claim for monetary damages should be dismissed because state attorneys are immune from suits for damages under the Eleventh Amendment. The Plaintiffs concur with Defendant King's argument.[14]  Accordingly, the Plaintiffs' claim for monetary damages against Defendant King is due to be dismissed.[15]

---

[13]  See Samuels v. Mackell, 401 U.S. 66 (1971). In Samuels, the Supreme Court held that "in cases where the state criminal prosecution was begun prior to the federal suit, the same equitable principles relevant to the propriety of an injunction must be taken into consideration by federal district courts in determining whether to issue a declaratory judgment, and that where an injunction would be impermissible under these principles, declaratory relief should ordinarily be denied as well." Id. at 73.

[14]  See Doc. 27, Plaintiffs' Response to Brad King's Motions to Dismiss, pg. 2-3.

[15]  See Universal Amusement Co., Inc. V. Hofheinz, 616 F.2d 202, 205 (5th Cir. 1980) (stating that prosecutors are immune from liability for damages in actions brought under the Civil Rights Act).

Defendant Farmer also argues that the Plaintiffs' claim for compensatory damages from Defendant Farmer is due to be dismissed. Defendant Farmer contends that he cannot be held responsible under Section 1983 for the arrest of Plaintiff Soulaguine, which was based on a presumptively valid statute, even if the statute is later determined to be unconstitutional, and based upon an order finding probable cause to believe that the Plaintiff had distributed obscene material.

The Court concludes that Defendant Farmer's motion to dismiss with respect to the Plaintiffs' claim for compensatory damages is due to be denied. The Plaintiffs have brought this action against Defendant Farmer in his official capacity as Sheriff of Sumter County. Therefore, the only immunity defense available to him is sovereign immunity.[16] Defendant Farmer's sovereign immunity defense is without merit since he is a county official, who is not an agent of the state, and, as such, is not immune from suit under the Eleventh Amendment.[17]

---

[16] See Kentucky v. Graham, 473 U.S. 159, 167 (1985) ("The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, qua entity, may possess, such as the Eleventh Amendment."); see also Hafer v. Melo, 502 U.S. 21, 25 (1991).

[17] See Hufford v. Rodgers, 912 F.2d 1338, 1341 (11th Cir. 1990) ("[S]ince sheriffs in Florida act only on behalf of the counties they serve, we hold that the Eleventh Amendment does not protect Florida sheriffs from liability under section 1983."); Wright v. El Paso County Jail, 642 F.2d 134, 136, n. 3 (5th Cir. 1981) ("The sheriff is not immune from a s 1983 damages suit brought against him in his official capacity, since in essence the suit is against the governmental unit of which the officer is an agent, and the county itself is not immune from a damages suit. . . If sued in his individual capacity, otherwise, the sheriff may avoid s 1983 liability to the extent that he has available to him a qualified, good faith immunity.")

## Conclusion

Accordingly, upon due consideration, it is ordered that:

(1) Sheriff Farmer's Motion to Dismiss Plaintiffs' Complaint (Doc. 22) is DENIED; and

(2) Defendant Brad King's Motion to Dismiss Count II of Plaintiffs' Complaint and Partial Motion to Dismiss Counts I and II of Plaintiffs' Complaint (Doc. 23) is DENIED with respect to Count II and GRANTED with respect to the Plaintiffs' claim for damages from Defendant King.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 15th day of June, 2005.

_____
UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record